# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ZONAHI ARIANA ZAMUDIO, LESLIE MORALES, and BRIANNE STRINGHAM, on behalf of themselves and all other persons similarly situated, known and unknown, | ) ) ) ) ) | |
| **Plaintiff,** | ) ) | 15 C 3917 |
| v. | ) ) | Judge John Z. Lee |
| NICK & HOWARD LLC d/b/a THE UNDERGROUND, ROCKIT RANCH PRODUCTIONS, INC., and SCOTT HORWITCH, individually, | ) ) ) ) ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Zonahi Zamudio, Leslie Morales, and Brianne Stringham are former employees of a nightclub, Nick & Howard LLC d/b/a The Underground. They brought suit against the nightclub, its owner, Rockit Ranch Productions, Inc., and their former supervisor, Scott Horwitch, alleging violations of Title VII of the Civil Rights Act of 1964 (Counts I, II, III, and IV), battery (Count V), violation of the Illinois Gender Violence Act (Count VI), violation of the Fair Labor Standards Act (Count VII), violation of the Illinois Minimum Wage Law (Count VIII), and violation of the Illinois Wage Payment and Collection Act (Counts IX and X). Defendants now move to dismiss (1) the class action allegations in Counts I, II, V, and VI; (2) Count VI as to corporate Defendants The Underground and Rockit Ranch; and (3) Count IX [26]. For the reasons stated below, the Court denies Defendants' request to dismiss the class action allegations and Count IX, but grants the request to dismiss Count VI as to The Underground and Rockit Ranch.

## **Factual Background**[1]

Plaintiffs Zamudio, Morales, and Stringham all started working for The Underground in 2013—Zamudio and Morales as servers and Stringham as a bartender. *See* Compl. ¶¶ 36–38. Horwitch is The Underground's general manager and supervised Plaintiffs. *See id.* ¶ 51. The Underground is owned and operated by Rockit Ranch. *See id.* ¶ 21.

As employees of The Underground, Plaintiffs were required to attend and participate in various activities for which they were not paid. These activities included training sessions, meetings before each shift, and off-site promotional events. *See id.* ¶¶ 41–42, 52. In addition, Plaintiffs were required to clock out before performing mandatory closing and check-out processes at the end of their shifts. *See id.* ¶ 43. Plaintiffs also allege that they had an agreement with their employer by which they should have been paid for the time they worked. *See id.* ¶ 40; *see also id.* ¶ 47 (citing Ex. E at 14).

In addition, throughout their employment, Plaintiffs were subject to touching and unwelcome sexual advances from Horwitch. *See id.* ¶ 59. According to Plaintiffs, while at work, Horwitch stuck his hand up Morales' shirt and asked whether she was wearing a bra. *See id.* ¶ 61. Similarly, Horwitch put his hand up Zamudio's and Morales' skirts—something Horwitch did regularly to other female employees of The Underground. *See id.* ¶¶ 63–64. On another occasion, while Morales and other female employees were performing their closing duties, Horwitch allegedly simulated sex with a blow-up doll. *See id.* ¶ 67. Plaintiffs assert that they and other female employees of The Underground were subjected to these and other instances of harassment by Horwitch.

---

[1] When reviewing a motion to dismiss, the Court assumes the alleged facts in the complaint are true and draws all possible inferences in Plaintiffs' favor. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

As for Stringham, after she had applied for a job at The Underground, she began receiving sexually explicit text messages from John Peter Barrand, an employee at the nightclub who oversaw human resources for Rockit Ranch and all of its properties. *See id.* ¶¶ 74, 82–83, 89. Despite Stringham's statements that the text messages were inappropriate, Barrand continued to send her messages and would show up at The Underground on nights that Stringham was scheduled to work. *See id.* ¶¶ 83, 86.

## **Legal Standard**

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *Christensen v. Cty. of Boone, Ill.*, 483 F.3d 454, 457 (7th Cir. 2007). Under the federal notice pleading standards, "a plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008); *see also* Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss under Rule 12(b)(6), the Court must "accept [ ] as true all well-pleaded facts alleged, and draw[ ] all possible inferences in [the plaintiff's] favor." *Tamayo*, 526 F.3d at 1081.

A complaint, however, must also allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For a claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Plausibility, however, "does not imply that the district court

should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

## Analysis

### I. Defendants' Motion to Strike Class Action Allegations

Defendants seek to strike the class action allegations contained in Counts I, II, V, and VI on the basis that the complaint does not satisfy the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). Although the pleading stage is usually not the proper moment to decide class-related questions, *see Damasco v. Clearwire Corp.*, 662 F.3d 891, 897 (7th Cir. 2011), Defendants are not challenging whether the class can be maintained under Federal Rule of Civil Procedure 23, *see* Defs.' Reply 10. Instead, Defendants argue only that Plaintiff's class action allegations are insufficient to withstand the Rules' pleading requirements.

In Count I, Plaintiffs allege that their supervisor at The Undergound sexually harassed them and created a hostile work environment in violation of Title VII. Defendants argue that, although the complaint sets forth sufficient factual allegations relating to Plaintiffs' individual claims, there are no such allegations for the putative class members. *See* Defs.' Mot. Dismiss Mem. 6. Contrary to Defendants' contentions, however, the complaint's allegations are sufficient to satisfy Rule 8. Plaintiffs interspersed the allegations regarding the putative class members along with the factual allegations involving the individual Plaintiffs. For example, the complaint alleges that Horwitch, a supervisor at The Underground, simulated sex with a blow-up doll while Plaintiff Morales and other female employees were performing their closing duties. *See* Compl. ¶ 67. Defendants' suggestion that "there is not a single well-pled factual assertion raised as to any of the putative class members," Defs.' Mot. Dismiss Mem. 6, is without merit.

Putting aside Plaintiffs' allegations regarding the doll, Defendants' arguments attempt to impose a higher burden for pleading than is actually required by the Rules. As Defendants admit,

Defs.' Mot. Dismiss Mem. 6, the complaint contains various accounts of alleged harassment relating to the individual Plaintiffs. *See, e.g.*, Compl. ¶¶ 59–71. After listing these particular instances of harassment, Plaintiffs allege that "other female employees at The Underground were regularly subjected to lewd touching and unwelcome sexual advances from Horwitch." *Id.* ¶ 59. Given the specific allegations involving the individual Plaintiffs, it is reasonable to infer based upon the totality of the complaint that the putative class members were subjected to similar instances of harassment. Without delving into the merits of the class under Rule 23, Plaintiffs' complaint is sufficient to sustain the class action allegations as to Count I.

In Count II, Plaintiff Stringham alleges that an employee of Rockit Ranch, which owns and manages The Underground, harassed her and other female employees and created a hostile work environment in violation of Title VII. As with Count I, Plaintiffs' complaint alleges specific instances of harassment directed at Plaintiff Stringham at the hand of John Barrand, an employee of Rockit Ranch. *See, e.g.*, Compl. ¶¶ 81–93. But the complaint then goes on to state that "Barrand also sent explicit communications to other employees of The Underground." *Id.* ¶ 152. Although certainly skeletal, this allegation in combination with the specific allegations relating to Stringham suffice to satisfy the pleading requirements of Rule 8.

Count V alleges that Horwitch committed the tort of battery against the individual Plaintiffs and a class of other similarly situated female employees of The Underground. Once again, the complaint alleges specific instances of offensive contact by Horwitch. *See, e.g.*, Compl. ¶¶ 60–66. The complaint states that going up the skirts of female employees was "Horwitch's preferred method of harassment," and that "other female employees of The Underground were regularly subjected to lewd touching and unwelcome sexual advances from Horwitch." *Id.* ¶¶ 59, 64. These allegations too are sufficient to survive at the pleading stage.

Finally, in Count VI, Plaintiffs allege that Defendants' conduct violates the Illinois Gender Violence Act, 740 ILCS 82/10. Count VI is based on the same factual allegations as those underlying Counts I and II. For the same reasons as stated above, the complaint's class action allegations relating to Count VI are sufficient at this stage of the litigation.

## II.     Defendants' Motion to Dismiss Count VI

In addition, Defendants seek to dismiss the Illinois Gender Violence Act claim in Count VI as to the corporate Defendants, Rockit Ranch and The Underground, on the grounds that the IGVA does not apply to corporate entities. Other judges on this court have already reached that conclusion. *See Fuesting v. Uline, Inc.*, 30 F. Supp. 3d 739, 742–44 (N.D. Ill. 2014); *Flood v. Wash. Square Rest., Inc.*, 2012 WL 6680345, *1–4 (N.D. Ill. Dec. 21, 2012); *Fleming v. Fireside W., LLC*, 2012 WL 6604642, *2–4 (N.D. Ill. Dec. 18, 2012); *Fayfar v. CF Mgmt.—IL, LLC*, 2012 WL 6062663, *1–3 (N.D. Ill. Nov. 4, 2012). And, not surprisingly, Plaintiffs do not oppose the motion to dismiss the IGVA claim against the corporate Defendants. *See* Pls.' Resp. 12. Accordingly, the Court grants Defendants' motion to dismiss Count VI as to Rockit Ranch and The Underground with prejudice.

## III.     Defendants' Motion to Dismiss Count IX

Lastly, Defendants seek dismissal of Count IX—which alleges The Underground violated of the Illinois Wage Payment and Collection Act—arguing that Plaintiffs failed to allege the existence of an agreement upon which the IWPCA claim can stand. The complaint lists several work-related activities for which Plaintiffs were not compensated. For example, Plaintiffs were required to attend mandatory meetings, trainings, and promotional events, but were allegedly not paid for the time spent at those meetings and events. *See* Compl. ¶¶ 41–44. Nonetheless, Defendants argue that in order to properly plead a claim based on the IWPCA, Plaintiffs must "allege that they or any putative class members had an agreement to be compensated for

mandatory training sessions, closing and check-out procedures, and promotional work, staffing meetings and marketing events." Defs.' Reply 13.

The IWPCA does not create a substantive right to payment for employees. *See Hoffman v. RoadLink Wokforce Sols., LLC*, 2014 WL 3808938, *4 (N.D. Ill. Aug. 1, 2014). Instead, the IWPCA allows employees to recover compensation owed by an employer "pursuant to an employment contract or agreement between the 2 parties." 820 ILCS 115/2–3. Thus, to prevail on an IWPCA claim, a plaintiff must show that he or she "had a valid contract or employment agreement." *Hess v. Kanoski & Assocs.*, 668 F.3d 446, 452 (7th Cir. 2012). Accordingly, some courts have dismissed claims under the IWPCA when the plaintiffs do not allege the existence of an agreement entitling the employee to the compensation. *See Hoffman*, 2014 WL 3808938, at *5 ("The trouble with Plaintiffs' submission . . . is that they do not allege that they had any agreement with Defendants requiring Defendants to compensate them for that time."); *Smith v. C.H. James Rest. Holdings, L.L.C.*, 2012 WL 255806, *1–2 (N.D. Ill. Jan. 26, 2012) ("Smith has not pointed to any contract or an agreement and the terms under such a contract or agreement relating to his IWPCA claim.").

Unlike in *Hoffman* and *Smith*, however, Plaintiffs here have alleged the existence of an employment agreement ensuring them of payment for the activities in question. *See* Compl. ¶ 40 ("Plaintiffs and other similarly-situated employees had an agreement and/or understanding with The Underground that they would be paid for all time they worked."). In fact, the training manual attached to the complaint specifically states that, if the employees are required to work promotional events outside normal operating times, they will be compensated. *See* Compl. Ex. E at 14–15. Accordingly, Plaintiffs' allegations, if proven true, are sufficient to allow the Court to draw a reasonable inference that they are entitled to relief under the IWPCA.

## Conclusion

For the reasons stated herein, the Court grants in part and denies in part Defendants' motion to dismiss [26]. The Court dismisses Count VI against Rockit Ranch and The Underground with prejudice. Defendants' motion to dismiss is denied in all other respects.

**IT IS SO ORDERED.**  ENTERED 11/4/15

_____
**John Z. Lee**
**United States District Judge**